**Affirm and Opinion Filed June 16, 2022**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00536-CV

### JIMMY E. WHITED, Appellant
### V.
### OLD AMERICAN COUNTY MUTUAL FIRE INSURANCE COMPANY,
### Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-16286**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Molberg

Appellant Jimmy E. Whited appeals the trial court's order denying his special

appearance in a lawsuit filed by appellee Old American County Mutual Fire

Insurance Company.  We affirm in this memorandum opinion.  *See* TEX. R. APP. P.

47.4.

### I.    BACKGROUND

Old American sued Whited for breach of a guaranty agreement in which he

personally guaranteed his company's obligations to Old American.  Old American

filed its first amended petition on May 13, 2021, in which it alleged the following

facts pertinent to personal jurisdiction. Old American is domiciled in and does business in Texas. Windhaven Insurance Services, LLC is also a Texas corporation. Whited, who was president of Windhaven but a resident of Florida, traveled to Texas at least four times beginning in 2015, hoping to secure a deal to make Windhaven the managing general agent of Old American for Texas insureds. Whited also "frequently called or emailed Old American"—at least once a week over six months—to negotiate the business between Old American and Windhaven.

In September 2015, Old American agreed to appoint Windhaven as its managing general agent in Texas. According to Old American, it agreed "to appoint Windhaven as its MGA after Whited agreed to execute [a guaranty agreement]." The parties entered the MGA agreement, which Whited executed and signed for Windhaven. Whited signed the personal guaranty agreement contemporaneously with the MGA agreement.

Under the MGA agreement, Old American appointed Windhaven to act as its managing general agent, as defined in the Texas Administrative Code and section 4053.001 of the Texas Insurance Code.[1] Windhaven had "the authority and duty to act on behalf of [Old American] in all respects, insofar as necessary for [Windhaven] to perform its function of a managing general agent for [Old American]." Its

---

[1] "'Managing general agent' means a person, firm, or corporation that has supervisory responsibility for the local agency and field operations of an insurer in this state or that is authorized by an insurer to accept or process on the insurer's behalf insurance policies produced and sold by other agents." TEX. INS. CODE § 4053.001(3).

authority included "production, appointment, and supervision of agents for [Old American], as well as underwriting, accounting and claims handling under the terms of [the] agreement."

The two companies agreed that any "obligations and undertakings of each of the parties to this Agreement shall be performable in Dallas County, Texas." And Windhaven agreed to pay to Old American all sums of money payable under the agreement in Dallas County, Texas. The agreement further stated it had been made and entered into in Texas and would be "governed by Texas law[.]"

Windhaven and Old American also agreed that

> any action or proceeding, however characterized, arising from or relating to this [MGA] Agreement will be brought only in the state court of Texas, County of Dallas, and the parties irrevocably submit to the exclusive jurisdiction of the court for the purpose of any such action or proceeding . . . . The parties waive any objection they may now or hereafter have to the venue of any such action or proceeding in such court and any claim that such action or proceeding has been brought in an inconvenient forum . . . . Process in any action or proceeding in either of the foregoing courts may be served by certified mail, which service will be sufficient to confer personal jurisdiction over the party so served.

As noted above, Whited's guaranty agreement was executed contemporaneously with the MGA agreement. Whited agreed his guaranty agreement was incident to the MGA agreement. Old American and Whited agreed they "desire[d] to continue the appointment of [Windhaven] a [sic] Texas Managing General Agency to act as [Old American's] Managing General Agent." Whited agreed he "wish[ed] to facilitate such continuing appointment and increase the

–3–

financial security to [Old American] by individually guaranteeing the performance of [Windhaven] . . . to [Old American]." Specifically, Whited agreed to guarantee Windhaven's performance and payment of

> any and all financial, credit or business obligations of [Windhaven] under the [MGA] Agreement, including, but not limited to, the payment of any and all funds owed to [Old American], reinsurers, brokers, agents, insureds, claimants, or finance companies by [Windhaven] and all of [Windhaven]'s balances arising pursuant to the [MGA] Agreement for business produced by Windhaven under the Reinsurance Agreement.

The guaranty was absolute, unconditional, and unlimited in scope; it was "of payment, not of collection." Old American had the right to proceed against Whited without first exhausting its remedies against Windhaven.

Whited and Old American agreed the guaranty agreement would be "interpreted by, construed in accordance with, and governed by the laws of the State of Texas." The parties further agreed the agreement was "executed and delivered as incident to the continuance of the Managing General Agency Agreement between Windhaven and [Old American]," and the agreement stated it and the MGA agreement were "negotiated, consummated and are performable in Dallas County, Dallas, Texas."

In 2019, Windhaven stopped performing under the MGA agreement after it began struggling financially. It filed for bankruptcy in 2020. Old American alleged it subsequently "uncovered rampant fraud and various breaches of the MGA Agreement and the Reinsurance Agreement by Windhaven and Whited." Old

American provided written default notice to Whited and Windhaven; neither paid Old American the amount Old American alleges it is owed. As a result, Old American filed this lawsuit for breach of the guaranty agreement.

Whited filed an amended special appearance on March 10, 2021. He argued he was a resident of Florida who had "worked out of Florida during all times relevant to [the] dispute"; he signed the contract at issue in Florida; and his limited Texas contacts were unrelated to the dispute or otherwise shielded by the "fiduciary doctrine because he came to Texas in a representative capacity." Therefore, he argued, he did not have minimum contacts with Texas. Whited further argued that exercising jurisdiction over him would not comport with traditional notions of fair play and substantial justice because it would be a significant burden on him; Texas had "minimal interest" in the dispute; the plaintiff would have to undertake proceedings in Florida even if it prevailed in Texas court; the interstate judicial system would be best served by proceeding in Whited's domiciled state of Florida; and it would not further a fundamental substantive social policy of this state. In a declaration in support of his special appearance, Whited stated, among other things, that he executed the guaranty agreement in his office in Florida.

Old American filed a response to Whited's amended special appearance. It argued first that Whited waived any objection to Texas's jurisdiction over him because the MGA agreement included a forum selection clause. Additionally, Old American argued that because Whited personally guaranteed Windhaven's

obligations, he had sufficient minimum contacts with Texas. Old American further argued that exercising jurisdiction over Whited would not offend traditional notions of fair play and substantial justice. Included with the response was the declaration of Old American's president, Andrew Kirkpatrick. He stated, among other things, that before filing for bankruptcy, Windhaven issued nearly 300,000 insurance policies in Texas and handled over 32,000 claims for Texas insureds.

Whited filed a supplement to his amended special appearance one day before the scheduled hearing on the special appearance. It included a second declaration from Whited. Among other things, Whited stated he located "nine email strings with Andrew Kirkpatrick of Old American[.]" He stated, "In none of these emails do I offer to provide a guaranty, or engage in any type of negotiation regarding a guaranty or the MGA Agreement." He also stated he did not recall negotiating the MGA agreement with Old American; instead, a "broker initiated communications with Old American on behalf of Windhaven . . . ." According to Whited, his executive team and Windhaven negotiated the agreement. Regarding the guaranty, Whited stated he did not volunteer or offer to provide a guaranty, nor did he induce Old American to enter the MGA by offering a personal guaranty; "[i]nstead, the request for a guarantor came from Old American, and they phrased it as a requirement for every such contract." Whited also stated that while the two agreements were being negotiated, he never met with anyone in Texas from Old American.

Old American filed objections to and a motion to strike Whited's special appearance evidence. In its motion, Old American argued Whited's amended special appearance was not properly sworn, as required by rule 120a of the rules of civil procedure; it was untimely because it was not filed seven days before the hearing; and several evidentiary objections should keep the trial court from considering particular statements in Whited's second declaration.

The trial court conducted a hearing on Whited's special appearance on May 20, 2021. The court heard legal arguments from the parties but received no further evidence and took the matter under advisement. On June 2, 2021, the trial court entered an order denying Whited's special appearance. This interlocutory appeal followed.

## II. Discussion

Though Old American first argues Whited waived any objection to jurisdiction in Texas based on the forum selection clause in the MGA agreement, we do not decide that question. Instead, we affirm based on Old American's second argument. We conclude that, for purposes of this lawsuit, Whited has "minimum contacts" with Texas because his contacts with Texas were purposeful and Old American's claims arise from those contacts, and that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

Whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 414

S.W.3d 142, 150 (Tex. 2013).  The plaintiff has the initial burden to plead allegations sufficient to confer jurisdiction; the burden then shifts to the defendant to negate all potential bases for personal jurisdiction pleaded by the plaintiff.  *See, e.g.*, *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016).  The defendant can negate the basis for jurisdiction "on either a factual or legal basis."  *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010).  Factually, "the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations," and the plaintiff can then respond with evidence affirming its allegations.  *Id.* Legally, the defendant can show that, even if true, the plaintiff's alleged facts do not establish jurisdiction.  *Id.*  "If the parties present conflicting evidence that raises a fact issue, we will resolve the dispute by upholding the trial court's determination." *TV Azteca*, 490 S.W.3d at 36 n.4.  We imply all facts necessary to support the judgment and supported by the evidence when the trial court does not issue findings of fact and conclusions of law, as here.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

Texas courts may exercise personal jurisdiction over a nonresident if Texas's long-arm statute authorizes the exercise of jurisdiction, and the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).  But Texas's long-arm statute reaches as far as due process allows.  *TV Azteca*, 490 S.W.3d at 36.  Due process allows personal jurisdiction over a nonresident, first,

when the nonresident has "minimum contacts" with Texas, and second, when the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

*a. Minimum contacts*

"For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). When specific jurisdiction is asserted, as here, "the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation." *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991).

"[M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Olympia Cap. Associates, L.P. v. Jackson*, 247 S.W.3d 399, 417 (Tex. App.—Dallas 2008, no pet.) (citing *Burger King*, 471 U.S. at 478–79). But a specific line of cases has examined guaranty contracts in particular: though different jurisdictions answer the question differently, "Texas cases addressing the issue have held that a nonresident guarantor is subject to suit in Texas." *J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 604 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Yet, we recognize that "[e]ach case

must be judged on its particular facts." *Rubinstein v. Lucchese, Inc.*, 497 S.W.3d 615, 629 (Tex. App.—Fort Worth 2016, no pet.).

In *J.D. Fields*, the plaintiff was a Texas company and the defendant guarantor was the president of a New Jersey company. 21 S.W.3d at 601. The Texas company initiated negotiations with the New Jersey company by faxing a price list from its Pennsylvania sales office. *Id*. The defendant company responded with a purchase order. *Id*. The Texas company conducted a credit check and refused to extend credit to defendant company. *Id*. Defendant guarantor then called plaintiff's Houston office and "offered to personally guarantee the indebtedness of defendant company." *Id*. The plaintiff accepted, and the guarantor faxed his written guaranty to Houston. *Id*. Afterwards, the only other Texas contact involved the defendant company mailing a payment to the plaintiff's Houston office. *Id*. The court of appeals observed that "the most critical fact in this case . . . is that defendant guarantor telephoned plaintiff's Houston office with an offer to personally guarantee the defendant company's indebtedness in order to induce plaintiff to contract with defendant company." *Id*. at 604. Given that, the court held that the defendant guarantor's contacts with Texas were sufficient to meet the due process minimum contacts standard. *Id*. at 605.

In so holding, the *J.D. Fields* court followed the reasoning of previous decisions, including *Nat'l Truckers Serv., Inc. v. Aero Sys., Inc.*, 480 S.W.2d 455 (Tex. Civ. App.—Fort Worth 1972, writ ref'd n.r.e.) and *Marathon Metallic Bldg.*

*Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921 (5th Cir. 1981). In *National Truckers*, a Florida corporation, Aero, agreed to guarantee any and all of a nonparty's debts owing to National Truckers. *Id.* at 458. An agreement was executed by Aero, in Florida presumably, and mailed to National Truckers in Fort Worth, and National Truckers continued to extend credit to the nonparty as a result. *Id.* Under the agreement, payments were to be made in Fort Worth and the guaranty was performable in Fort Worth. *Id.* The nonparty defaulted, and National Truckers demanded payment from Aero; when it did not pay the full amount, National Truckers sued. *Id.* The appellate court held that Aero had sufficient minimum contacts with Texas. *Id.* at 459–60.

In *Marathon Metallic Bldg.*, the plaintiff was a Texas company that made and sold prefabricated buildings in Houston. 653 F.2d at 922. The defendant was the corporate officer of a Colorado company formed to distribute plaintiff's products in Colorado. *Id.* The defendant "executed an instrument by which [he] guaranteed, without monetary limit and in broad terms, the payment of [the Colorado company's] obligations to [plaintiff]," and that guaranty agreement was then forwarded to the plaintiff's office in Houston. *Id.* A month later, the two companies agreed to a contract governing their business relationship, and the contract included a Texas choice-of-law clause. *Id.* After the Colorado company failed to pay its debts, the plaintiff sued the company and the defendant guarantor. *Id.* The Fifth Circuit determined the defendant's guaranty

plainly contemplated advances of credit to [the Colorado company], with an open-ended obligation on his part to stand good for those advances. Another corporate officer, its president, immediately forwarded the guaranty to Houston; and [defendant's] corporation subsequently entered into credit transactions with the Texas entity, purchasing merchandise and taking title in Texas. The effect of such a guaranty is to involve [the defendant] in each such advance of credit over many months and purposefully to cause business activity, foreseeable by [the defendant], in the forum state. The general contract pursuant to which this was done, issued and sent a few weeks after the guaranty, specifically stipulated that it would be governed by the laws of Texas. Here is purposeful and affirmative action, resulting in, at the least, a minimum contact with Texas by [the defendant].

*Id*. at 923 (citation omitted).

Here, Whited personally guaranteed the performance and payment of "any and all financial, credit or business obligations" that one Texas company owed to another Texas company. These obligations were those of a managing general agent as defined by the Texas Administrative Code and the Texas Insurance Code. He agreed that his guaranty would be "interpreted by, construed in accordance with, and governed by the laws of the State of Texas."[2] Moreover, the agreement he guaranteed included another such Texas choice-of-law clause as well as a Texas forum-selection clause. Both his guaranty and the MGA obligations he guaranteed were performable in Dallas County, Texas. Old American agreed to appoint Windhaven as its managing general agent after Whited agreed to execute this guaranty. According to the guaranty agreement, Whited agreed to it because he

---

[2] *See, e.g.*, *Burger King Corp.*, 471 U.S. at 482 (though not dispositive, a choice of law clause may reinforce a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there" and is thus a factor to consider in our analysis).

"desire[d] to continue the appointment of [Windhaven] a [sic] Texas Managing General Agency to act as [Old American's] Managing General Agent"; he "wish[ed] to facilitate such continuing appointment"; and he wished to increase Old American's financial security. As in *J.D. Fields*, the plaintiff agreed to a contract with the defendant's company after the defendant agreed to execute a guaranty agreement. As in *Nat'l Truckers*, the guaranty was performable in Texas. And as in *Marathon Metallic Bldg.*, the guaranty would be governed by the laws of Texas.

We follow the reasoning of our sister courts and conclude that, through his guaranty agreement, Whited has sufficient minimum contacts with Texas. *See also Rubinstein*, 497 S.W.3d at 632 (finding sufficient minimum contacts when, pursuant to plaintiff's "standard business practice," nonresident defendant personally guaranteed—in an agreement including a Texas choice-of-law provision—his company's indebtedness to induce plaintiff to extend credit to his company).

In reaching this conclusion, we reject Whited's argument that the guaranty agreement cannot be the basis for sufficient minimum contacts because Old American presented no evidence Whited gave his guarantee as an inducement to Old American to contract with Windhaven. Whited relies on *Booth v. Kontomitras*, 485 S.W.3d 461, 485 (Tex. App.—Beaumont 2016, no pet.), where the court stated that "if an individual guarantees that he will be responsible for a corporate entity if it defaults, the guaranty may serve as a basis for personal jurisdiction 'if there is a showing that the guarantor offered his guarantee as an inducement to the plaintiff to

–13–

enter into that contract.'"  The Beaumont court relied on *Tuscano v. Osterberg*, 82 S.W.3d 457, 467 (Tex. App.—El Paso 2002, no pet.), for this statement, which in turn cited only *J.D. Fields*, 21 S.W.3d at 604.  We do not read *J.D. Fields* to stand for such a general proposition.  Instead, the most that can be said is that the court of appeals found the guarantor's offer as an inducement significant under the facts of that case.

Furthermore, neither *Booth* nor *Tuscano* is helpful here.  In the former, one of the defendants signed a corporate guaranty and a personal guaranty.  *Booth*, 485 S.W.3d at 483.  Neither guaranty provided that Texas was the place of performance. *Id*. at 484.  The incorporated "master agreement" was governed by California law and provided that California was the place of performance.  *Id*. at 484.  The related "agreement for remanufacture" listed a California address for both the corporate defendant and the plaintiff.  *Id*. at 483.  On those facts, the court of appeals concluded that, without evidence of inducement, the guaranty agreements did not offer a sufficient basis for exercising personal jurisdiction.  *Id*. at 485.  In *Tuscano*, the plaintiffs sued the defendant not for breach of a guaranty agreement but "for various causes of action associated with the [their] claimed ownership interest in a New York corporation."  *Tuscano*, 82 S.W.3d at 461.  The court of appeals, in the course of analyzing whether the trial court properly exercised *general* jurisdiction over the defendant, noted he "signed a personal guarantee for rentals under a lease for [a Texas corporation] . . . ."  *Id*. at 467.  After citing *J.D. Fields*, the court also noted

–14–

that there was no evidence the defendant offered his guarantee "as a method of inducing [the plaintiff] to contract with" the lessor and summarily concluded his role as a guarantor for a corporate lease did not "qualify as a contact." *Id.* Even if these two cases did not misapply *J.D. Shields*, neither the California-heavy contracts in *Booth* nor the general jurisdiction question in *Tuscano* is instructive here.

More importantly, in this case, we see no legally significant difference between a personal guaranty as an "inducement" to the plaintiff to agree to the underlying contract and a personal guaranty "as a requirement for" the underlying contract that Whited described in his declaration. Our inquiry in this personal jurisdiction analysis is whether Whited "purposefully avail[ed] [himself] of the privilege of conducting activities within [Texas], thus invoking the benefits and protections of its laws." *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Whether the guaranty was Whited's idea or Old American's, whether it was an "inducement" or a "requirement," Whited's obligations under the agreement were the same. Whited, in executing the personal guaranty, "created 'continuing obligations' between himself and residents of" Texas and therefore "he manifestly has availed himself of the privilege of conducting business" here. *See Burger King*, 471 U.S. at 476.

Furthermore, Old American's alleged cause of action arises from Whited's contacts with Texas: Old American sued Whited for breach of the guaranty agreement. *See, e.g.*, *Gubitosi v. Buddy Schoellkopf Products, Inc.*, 545 S.W.2d 528,

–15–

536 (Tex. Civ. App.—Tyler 1976, no writ) ("This cause of action certainly arises from the transaction, being based solely on the guaranty agreements themselves."); *see also Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) ("[S]pecific jurisdiction may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state." (internal quotations and citations omitted)).

### b. *Fair play and substantial justice*

We also conclude the exercise of jurisdiction here comports with traditional notions of fair play and substantial justice. In considering this question, we look to five factors: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Guardian Royal Exch. Assur., Ltd*, 815 S.W.2d at 228. As long as a defendant has minimum contacts with Texas, this "fair-play prong" will be difficult for a defendant to satisfy. *Id*. at 231. To do so, he must present a "compelling case" that some factor or consideration would render jurisdiction unreasonable. *Id*. Generally, such cases are limited to those involving international defendants. *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 378 n.8 (Tex. App.—Dallas 2007, pet. denied).

First, Whited's burden in defending against Old American's claim in Texas does not render jurisdiction in Texas unfair. Nothing in the record indicates that litigating this suit in Texas would be unfair to Whited, who has traveled to Texas numerous times "over the last several years" for business and personal reasons. As the president of Windhaven, he traveled to Texas "on occasion" in his "representative capacity." In response to an interrogatory, Whited indicated he has signed leases for two Texas apartments, one of which is in Dallas. In Old American's president's declaration, he stated that Whited chartered planes or took commercial flights to travel to Texas "on a frequent basis" to meet with Old American or to oversee Windhaven's performance under the MGA agreement. Though "there is some geographical distance between Texas and Florida, distance alone is not sufficient to defeat jurisdiction." *Tabacinic v. Frazier*, 372 S.W.3d 658, 671 (Tex. App.—Dallas 2012, no pet.). Second, Texas has an interest in resolving this dispute over a personal guaranty governed by Texas law, which was a condition of Texas entity Old American's doing business with Texas entity Windhaven. Third, Old American, which is domiciled in and does business in Texas, has a strong interest in obtaining convenient and effective relief in Texas. Fourth, given that the guaranty was governed by Texas law and the underlying MGA relationship was defined by Texas law, we think the "interstate judicial system's interest in obtaining the most efficient resolution of controversies" favors jurisdiction in Texas. Finally, "[w]e perceive no particular interest implicating the shared interest of multiple states

–17–

or the furtherance of fundamental substantive social policies." *Rubinstein*, 497 S.W.3d at 633. Accordingly, we conclude the exercise of jurisdiction here comports with traditional notions of fair play and substantial justice.

## III.   CONCLUSION

Because we conclude Whited had sufficient minimum contacts with Texas and the trial court's exercise of personal jurisdiction over him does not offend traditional notions of fair play and substantial justice, we affirm the trial court's denial of Whited's special appearance.

<table>
<tr><td></td><td>/Ken Molberg/</td></tr>
<tr><td>210536f.p05</td><td>KEN MOLBERG<br>JUSTICE</td></tr>
</table>



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JIMMY E. WHITED, Appellant

No. 05-21-00536-CV      V.

OLD AMERICAN COUNTY
MUTUAL FIRE INSURANCE
COMPANY, Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-16286.
Opinion delivered by Justice
Molberg. Justices Myers and Garcia
participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the special appearance of JIMMY E. WHITED is **AFFIRMED**.

It is **ORDERED** that appellee OLD AMERICAN COUNTY MUTUAL FIRE INSURANCE COMPANY recover its costs of this appeal from appellant JIMMY E. WHITED.

Judgment entered this 16th day of June 2022.