Michael BOOTH, Thomas Allen, Robert Spaak, Randy Glessner, Courtney Williams, Valerie J. Spaak, Mary Allen, Robert W. Thomas Sr., and Theresa M. Williams, Appellants

v.

Laura KONTOMITRAS, Appellee

NO. 09–15–00174–CV

Court of Appeals of Texas, Beaumont.

Submitted on August 6, 2015

Opinion Delivered January 21, 2016

462

Felix Valenzuela, Valenzuela Law Firm, El Paso, for Appellants.

J. Keith Stanley, Fairchild, Price, Haley & Smith, LLP, Center, for Appellee.

Before McKeithen, C.J., Horton and Johnson, JJ.

## OPINION

LEANNE JOHNSON, Justice

Appellants Michael Booth, Thomas Allen, Robert Spaak, Randy Glessner, Courtney Williams, Valerie J. Spaak, Mary Allen, Robert W. Thomas Sr., and Theresa M. Williams (collectively Appellants) filed an interlocutory appeal from the trial court's denial of Appellants' special appearances. *See* Tex. Civ. Prac. & Rem.

Code Ann. § 51.014(a)(7) (West 2015). We reverse and remand.

### BACKGROUND

In November of 2014, Appellee Laura Kontomitras (Kontomitras or Appellee) filed an Original Petition against defendants Michael Booth a/k/a Michael Bourgogne (Booth), Thomas Allen (Allen), Robert Spaak (Spaak), Randy Glessner (Glessner), Courtney Williams a/k/a Courtney Bourgogne (Courtney Williams), Valerie J. Spaak (Valerie Spaak), Mary Allen, and Duraworks Metals & Holdings, Inc. (Duraworks). In January of 2015, Kontomitras filed a First Amended Original Petition, adding defendants Robert W. Thomas (Robert Thomas), Theresa Williams, and Electric Car Distributors, Inc. (Electric Car). In her Original Petition and First Amended Original Petition, Kontomitras brought claims for breach of contract, fraud, conversion, conspiracy, and alter ego/single business theory. The plaintiff's live pleading at the time of the trial court's denial of the special appearances was the Plaintiff's First Amended Original Petition. With respect to the parties and jurisdiction of the trial court, Kontomitras alleged the following in her First Amended Original Petition:

2. *Parties.*

a. Plaintiff is an individual with residences in the States of Texas and California.

b. Defendant Michael Booth a/k/a Michael Bourgogne is an individual whose place of employment is located at 34390 Gateway Drive, Palm Desert, California 92211. No service is necessary at this time.

c. Defendant Thomas Allen is an individual residing at 4 Scarborough Way, Rancho Mirage, California 92270. No service is necessary at this time.

d. Defendant Duraworks Metals & Holdings, Inc. is a Texas corporation. Personal service may be had upon it by serving its president, Thomas Allen, at 4 Scarborough Way, Rancho Mirage, California 92270. No service is necessary at this time.

e. Defendant Robert Spaak is an individual residing at 146 Loch Lomond Road, Rancho Mirage, California 92270. No service is necessary at this time.

f. Defendant Randy Glessner is an individual whose place of employment is located at 34390 Gateway Drive, Palm Desert, California 92211. No service is necessary at this time.

g. Defendant Courtney Williams a/k/a Courtney Bourgogne is an individual residing at residing at [sic] 6416 Bradley Place, Los Angeles, California 90056. No service is necessary at this time.

h. Defendant Valerie J. Spaak is an individual residing at 146 Loch Lomond Road, Rancho Mirage, California 92270. No service is necessary at this time.

i. Defendant Mary L. Allen is an individual residing at 4 Scarborough Way, Rancho Mirage, California 92270. No service is necessary at this time.

j. Defendant Robert W. Thomas is an individual whose principal place of business is 71441 Highway 111, Rancho Mirage, California 92270. Personal service may be had upon him at that address.

k. Defendant Theresa M. Williams is an individual residing at residing at [sic] 6416 Bradley Place, Los Angeles, California 90056. Personal service may be had upon her at that address.

j. [sic] Defendant Electric Car Distributors, Inc. is a California company whose principal place of business is 71441 Highway 111, Rancho Mirage, California 92270. Personal service may be had upon it by serving its registered agent Incorp Services, Inc. at 5716 Corsa Ave., Suite 110, Westlake Village, California 91362.

. . . .

5. This court has jurisdiction over Defendant Duraworks as Defendant is a Texas corporation whose principal place of business is in Jasper County, Texas.

6. This court has jurisdiction over each Defendant because each Defendant purposefully availed himself or itself, either individually or acting as a participant in a conspiracy with the other defendants, of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over each Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

7. Plaintiff would show that each Defendant had continuous and systematic contacts with the state of Texas sufficient to establish general jurisdiction over each Defendant.

8. Plaintiff would also show that the cause of action arose from or relates to the contacts of each Defendant to the state of Texas, including but not limited to the ownership and operation of Defendant Duraworks (whether legally or illegally), thereby conferring specific jurisdiction with respect to each Defendant.[1]

---

1. To the extent Kontomitras makes additional factual allegations as to Appellants in her brief on appeal that are not contained in the appellate record, we do not consider the additional allegations. *See* Tex. R. App. P. 34.1.

Kontomitras alleged that Booth is a "financial predator and 'confidence man[,]'" and that Booth was previously convicted in the State of Washington for "Federal felony wire fraud and money laundering." She further alleged that Booth was under federal post-conviction supervision that "placed restrictions on him regarding his participation in financial transactions requiring him to engage in a shell game of accounts, people and money in an effort to elude Federal authorities." She alleged that the situation leading to his conviction in the State of Washington established a modus operandi for his scams and schemes that function similar to a "Ponzi scheme." According to Kontomitras, following his release from prison, Booth began cultivating a relationship with Kontomitras in an effort to defraud her of money, individually and through Duraworks. Kontomitras alleged that after her husband died unexpectedly in 2012, she was left with certain "financial security" and that is when "Booth began plying [sic] his confidence game trade on Plaintiff" and he convinced her to "invest and/or loan Booth almost two million dollars ... toward Duraworks and the ill-fated (and in fact non-existent) golf cart venture." Kontomitras's First Amended Original Petition further alleged as follows:

> g. Duraworks Metals & Holdings, Inc. is a company established in the State of Texas at Booth's direction. Purportedly, similar to the Washington scam, Duraworks would serve as a middle man between its customers and suppliers whereby the customers would receive materials needed for a fee. Additionally, Duraworks would obtain monies from investors which would then be used to manufacture high end, deluxe golf carts for sale to the public, a portion of profits allegedly to be returned to the investors.

> h. Booth is, without question, the ringleader and intellectual director of the fraudulent business practices and criminal enterprise. To Plaintiff's knowledge, despite Booth and his conspirators' activities, the lack of any production and the large influx of capital, Duraworks has yet to make any profit or to actually produce more than three actual products.

According to Kontomitras, the defendants executed a sequence of agreements beginning in September 2013. Kontomitras alleged that

> ...although Booth was at all times the sole negotiator and contact with Plaintiff, he refrained from signing most, but not all, of the documentation.... Most of the transactions were designed to occur through the greased palms of Allen as Booth continued his efforts to hide his involvement from Federal authorities.

Kontomitras alleged that: Booth convinced Kontomitras to invest in Duraworks; Spaak and Glessner are associates of Booth who operate to carry out the details of Booth's activities; Valerie Spaak and Mary Allen, spouses of Robert Spaak and Thomas Allen, signed contracts with Kontomitras as guarantors of the contracts at issue; and Courtney Williams is "the purported spouse of Booth whose function is to provide additional 'cover' to Booth in the prohibited transactions and holdings in which he engages and develops."

On December 22, 2014, Mary Allen, Thomas Allen, Valerie Spaak, and Robert Spaak each filed Special Appearances challenging personal jurisdiction. On December 29, 2014, Courtney Williams, Michael Booth, and Randy Glessner filed Special Appearances challenging personal jurisdiction. On February 23, 2015, Robert Thomas and Theresa Williams filed Special Appearances challenging personal jurisdic-

tion. All of the Appellants were represented by attorneys from Kemp Smith, LLP (Kemp Smith). On April 14, 2015, Kontomitras timely filed a Response to Booth's Special Appearance, along with her Affidavit and other exhibits referenced in her Response to support her allegations against each of the defendants who filed Special Appearances (hereinafter "defendants" [2]), encompassing ninety-two pages.[3] The defendants filed replies to Kontomitras's Response.

In each Special Appearance, the defendants denied Texas residency, denied having minimum contacts with Texas, and denied purposeful availment in Texas. Each of the defendants asserted in their Special Appearances that "the Plaintiff is a Texas resident and contracted with a Texas entity, Defendant Duraworks Metals & Holdings, Inc." In Kontomitras's Response to the Special Appearances, she alleged that she is "an individual with residences in the State of Texas and the State of California." She argued that personal jurisdiction over all defendants was proper because

> Defendant[s], acting individually and in concert contrived a scheme or plan to obtain money from plaintiff in Texas and divert those funds for their own personal benefit and use. Each made representations to plaintiff regarding use of her funds to entice her into dealing with defendants, negotiated and facilitated agreements with plaintiff in Texas or took part in the obfuscation and diversion of money received from plaintiff thereafter. All defendants knew plaintiff resided in Texas and cannot claim it

wasn't foreseeable that their wrongful and/or tortious activities, regardless of where they occurred, would have consequences within Texas.

Kontomitras argued that general jurisdiction was proper because defendants Duraworks, Thomas Allen, Mary Allen, Robert Spaak, Valerie Spaak, and Theresa Williams own property located in El Paso and Jasper County, Texas. In her Response, Kontomitras referenced and attached a copy of certain executed agreements, including: an Agreement for the Remanufacture and Delivery of Golf Cars (the Agreement for Remanufacture), signed by Kontomitras and by Allen as president of Duraworks; a Master Agreement for the Remanufacture and Delivery of Golf Cars (Master Agreement), signed by Kontomitras and by Allen as president of Duraworks; five Promissory Note[s] (Promissory Notes), executed on various dates, signed by Allen as president of Duraworks; a Corporate Guaranty of Duraworks Metals & Holdings, Inc. (Guaranty), signed by Allen as president of Duraworks; an Individual Personal Guaranty of Thomas P. Allen (Personal Guaranty), signed by Allen; and a Consignment Agreement (Consignment Agreement) signed by Allen as president of Duraworks. The Agreement for Remanufacture states that Duraworks is a Texas corporation but it provides an address for Duraworks that is in Los Angeles, California; and, it states that Kontomitras's address is in Los Angeles, California. The Agreement for Remanufacture further states that

---

**2.** We reference the Appellants as "defendants" collectively but note that there are other named defendants (Duraworks and Electric Car) in the pending suit who are not parties to this appeal.

**3.** According to Appellants, Kontomitras also filed a Motion to Show Authority and Motion to Disqualify the law firm of Kemp Smith from representing any of the defendants. In the trial court's order dated April 30, 2015, the trial court sustained the motion to disqualify but neither party challenges the trial court's ruling on the motion to disqualify, and therefore that issue is not before us on appeal.

...[Duraworks] shall use [the money advanced to Duraworks by Kontomitras][ ] for the purchase and remanufacture of 70 Cars as set forth herein. Remanufacture of the Cars shall take place at the [Duraworks] facility located at 34450 Gateway Drive, H-100, Palm Desert, California 92211 (the "Facility"). All decisions regarding the purchase of used Cars, the remanufacture of each Car, including body style, color, accessories, and the source of all new components (bushings, bearings, wiring and the like) shall be at the sole discretion of [Duraworks]. When each Car is remanufactured, [Duraworks] shall obtain a new California vehicle identification number ("V1N") for that Car and shall issue a Manufacturer's Statement of Origin ("MSO") for that Car.

. . . .

...This Agreement and the Related Documents are and will be governed by, and the rights of the Parties will be determined by the laws of the State of California except to the extent that federal law controls.... The Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Kontomitras' locality. The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Kontomitras' location as set forth at the beginning of this Agreement.

On April 30, 2015, the trial court held a hearing on the Special Appearances and on the Motion to Show Authority and Motion to Disqualify. Kontomitras appeared personally and through her attorney, and all of the defendants except Duraworks and Electric Car appeared through and were represented by the same Kemp Smith attorney. There is no indication in the appellate record as to whether or not the parties engaged in any discovery prior to the hearing. There were no live witnesses at the hearing, and no additional evidence was offered or admitted at the hearing. The defendants argued that "[a]ll the contracts are occurring in California, [Kontomitras] lives in California. All of these individuals are residents of the state of California[.]" Kontomitras argued that Allen and Spaak appeared on behalf of Duraworks and Electric Car in Texas so that "they are availing themselves with Texas[.]" She further argued that

...Mr. Booth is back here using all these people to run his Ponzi scheme. He's doing it in Texas. As Ms. Kontomitras' affidavit sets forth, both Defendant Allen, Defendant Glessner came to Texas on several occasions. They were trying to set up another business here in Buna in Jasper County....

. . . .

...Mr. Glessner was directed specifically by Mr. Booth to come to Texas to scout locations for a new business operation that he, Mr. Allen, and Mr. Glessner were going to operate in Buna again. I know that Mr. Glessner has come to Texas on several occasions and spent the night here. I know that Mr. Booth had a vehicle purchased that was stored here in Jasper County. I think Mr. Glessner had access to that vehicle.

. . . .

...I don't know that Mr. Booth personally crossed the Rio Grande River to get here, but things were going on at his specific direction here.

The trial court issued a letter ruling dated April 30, 2015, and entered of record on May 1, 2015, wherein the court entered an Order denying "Defendants, Special Appearance and Special Exceptions[,]" denying the "Defendant's Request for a Pro-

tective Order[,]" and granting the "Plaintiff's Motion to Disqualify[,]" requiring that "Defendants are to retain new counsel immediately." On May 8, 2015, Kemp Smith filed a motion requesting that the court issue findings of fact and conclusions of law with respect to the letter ruling. On May 11, 2015, Appellants filed a notice of interlocutory appeal, appealing the denial of their special appearances. There are no findings of fact and conclusions of law in the appellate record. According to the Appellants' appellate brief, Duraworks and Electric Car filed answers to the suit on May 7, 2015.

### SPECIFICS OF APPELLANTS' SPECIAL APPEARANCES

In their Special Appearances, Appellants alleged that their contacts with Texas are insufficient to support personal jurisdiction, that Kontomitras's claims do not arise from Appellants' contacts with Texas, that Appellants have not had continuous and systematic contacts with Texas, that Appellants have never committed a tort in Texas, and that exercising personal jurisdiction over Appellants would not comport with due process but would offend traditional notions of fair play and substantial justice. Each Appellant filed an affidavit with his or her Special Appearance. In each affidavit the Appellants alleged they are residents of California. The affidavits of Mary Allen, Thomas Allen, Valerie Spaak, Robert Spaak, Courtney Williams, Michael Booth, Randy Glessner, and Robert Thomas stated that they do not own any real property in Texas. Mary Allen, Valerie Spaak, Courtney Williams, Michael Booth, Randy Glessner, Theresa Williams, and Robert Thomas stated in their affidavits that they are not employees or officers of Duraworks. Thomas Allen's affidavit stated that he is the president of Duraworks, and Robert Spaak's affidavit stated

that he is the secretary/treasurer of Duraworks.

Mary Allen, Robert Spaak, and Robert Thomas stated in their affidavits that they have never been to Texas. Thomas Allen asserted in his affidavit that, although he had made two trips to Texas, once in 1946 with his father and once in 2014 for dinner, he has never been to Texas "in any capacity or with any relation to" Duraworks. Valerie Spaak further averred in her affidavit that she has only been to Texas once to visit a family member. Courtney Williams stated in her affidavit that she has made "several brief trips" to Texas to visit friends or on the way to visit family. Booth asserted that he has made one personal visit to El Paso and that he was incarcerated at a federal institution in Texas. Glessner asserted that he made "some brief personal visits" to Texas and "some work related visits" to Texas on behalf of an employer but not for Duraworks. Theresa Williams stated that "[d]uring the past 10 years," she has been to Texas "four or five times to visit real property that she owns[ ]" but not for any other reason.

Mary Allen, Valerie and Robert Spaak, Courtney Williams, Theresa Williams, and Robert Thomas stated in their affidavits that they never interacted with Kontomitras. Thomas Allen contended in his affidavit that he had "limited interactions" with Kontomitras "by telephone only." Booth averred in his affidavit that Kontomitras initiated "numerous calls, texts, and emails" with him, that she visited with him while he was incarcerated in Washington State, and that she and her son played golf with Booth. There is no indication in Booth's affidavit where Kontomitras or Booth may have been located (i.e., Texas, California, or elsewhere) when Kontomitras had the "numerous calls, texts, and emails" with Booth. Glessner stated his

interactions with Kontomitras were limited to "some telephone calls and emails." There is no indication in Glessner's affidavit where Kontomitras or Glessner may have been located (i.e., Texas, California, or elsewhere) when the "calls and emails" were exchanged with Glessner.

### KONTOMITRAS'S RESPONSE TO THE SPECIAL APPEARANCES

Kontomitras filed a Response to Defendant's Special Appearance (hereinafter "Response"). In the initial paragraph of her Response, Kontomitras stated the Response was being made to Booth's Special Appearance. Notwithstanding that specific reference, therein Kontomitras included an argument and allegations regarding each Appellant. She argued that all Appellants conducted business within the State of Texas and purposefully availed themselves of the privilege of conducting business within the State and that "[a]ll of defendants' efforts to obtain money from plaintiff were directed to plaintiff in Texas and resulted in continuing contacts with the state." She included an affidavit with her Response. In her Response, she made specific allegations as follows:

*Michael Booth*

- Booth owns property in Texas.
- Booth "orchestrated a common scheme or plan" with the other defendants to obtain money from Kontomitras for the use of defendants through "a series of agreements with plaintiff in Texas."
- Booth directed Allen and Glessner to spend money on Booth's behalf, including creating Duraworks, to arrange a place of business for Duraworks in Texas, and to view property in Texas that Duraworks might purchase.
- Booth "directed that a luxury car be purchased and . . . stored in Buna, Jasper County, Texas."

- Booth directed others to acquire credit arrangements from parties located in Buna, Jasper County, Texas, and to make payments on such accounts.
- Booth "regularly and systematically maintained a presence and activity in Jasper County, Texas."

*Thomas Allen*

- Allen is the president and a principal and officer of Duraworks.
- Allen has conducted business in Texas.
- Allen acted in concert with Booth to conceal Booth's involvement in the transactions with Kontomitras in Texas.
- Allen owns property in Texas.
- Booth directed Allen to arrange places of business for Duraworks and Electric Car in Buna, Jasper County, Texas.
- Booth directed Allen to acquire credit arrangements from parties located in Buna, Jasper County, Texas, and to make account payments thereon.
- Allen "regularly and systematically maintained a presence and activity in Jasper County, Texas."
- Allen came to Texas with Glessner on several occasions, trying to set up another business in Buna in Jasper County.

*Robert Spaak*

- Spaak is a principal and officer of Electric Car, which has a place of business in Texas.
- Spaak has owned real property in El Paso, Texas.
- Spaak participated in negotiating agreements with Kontomitras and signed as guarantor of the contracts that are the basis of this lawsuit.

*Randy Glessner*

- Glessner has conducted business in Texas, including negotiating agreements with Kontomitras and signing as a guarantor of the contracts that are the basis of this lawsuit.
- Booth directed Glessner to arrange places of business for Duraworks and Electric Car in Buna, Jasper County, Texas, and Glessner visited Texas on several occasions to view property for potential purchase.
- Booth directed Glessner to spend funds on his behalf "for personal items[,]" specifically to purchase a "luxury car" that was stored in Buna, Jasper County, Texas.
- Booth directed Glessner to arrange for credit from parties located in Buna, Jasper County, Texas, and to make account payments thereon.
- Glessner "regularly and systematically maintained a presence and activity in Jasper County, Texas."

*Mary Allen, Valerie Spaak, Courtney Williams, and Theresa Williams*

- All of these individuals are residents of California.
- Valerie Spaak and Mary Allen are the spouses of Robert Spaak and Thomas Allen and signed contracts with Kontomitras as guarantors of the contracts at issue in this lawsuit.
- Mary Allen, Valerie Spaak, and Courtney Williams are spouses with a community interest in all property held by their respective husbands and, as a result, have property interests in Texas.[4]
- Theresa Williams has conducted business in Texas, has established continu-

ing contacts with Kontomitras, has owned property in Texas, and has been "the direct knowing beneficiary of money diverted from plaintiff as part of this scheme or plan."

REPLIES TO RESPONSE

Booth filed a Reply to Plaintiff's Response to Defendant's Special Appearance. Defendants Thomas Allen, Mary Allen, Robert Spaak, Randy Glessner, Courtney Williams, Valerie Spaak, Robert Thomas, and Theresa Williams also filed a Reply to Plaintiff's Response to Defendant's Special Appearance. In Booth's Reply brief, Booth alleged that Kontomitras owned property in Jasper County, Texas, but that she was a California resident. Booth argued that "[s]ince Plaintiff is not a Texas resident neither Section 17.042(1) nor 17.042(3) of the Texas Civil Practices and Remedies Code should apply in this case." Booth further argued that "[i]gnoring the fact that Section 17.0421(1) of the Texas Civil Practices and Remedies Code is inapplicable to a nonresident plaintiff," Kontomitras failed to establish that Booth purposefully availed himself of conducting activities in Texas. Booth further argued that

(a) Defendant Michael Booth did not sign any of the contracts provided in Exhibit B to Plaintiff's Response. *See* Plaintiff's Response Exhibit B Pages 21, 41, 47, and 56. In fact, each of these contracts is between Duraworks Metals & Holdings, Inc. ("Duraworks") at its California address [footnote omitted] and Plaintiff at her California residence, and each contract is signed by an officer of Duraworks. *See* Plaintiff's Response Exhibit B pages 16, 21, 36, 41, 42, 47, 52,

---

4. In asserting community property as a basis for personal jurisdiction, Kontomitras cited to section 760 of the California Family Code, which provides that "[e]xcept as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal. Fam. Code § 760 (Deering, LEXIS through 2015 session).

and 56. Additionally, each contract includes a provision stating that it will be governed by the laws of the State of California. *See* Plaintiff's Response Exhibit B pages 20, 40, 47, and 54. Finally each "Agreement for the Remanufacture and Delivery of Golf Cars" states that it is to be performed in California. *See* Plaintiff's Response Exhibit B pages 16, 36, and 42.

(b) Defendant Michael Booth did not sign any of the Promissory Notes provided in Exhibit B to Plaintiff's Response. *See* Plaintiff's Response Exhibit B Pages 48, and 57–60. [footnote omitted]

(c) Defendant Michael Booth's signature does appear on a total of two accountings to Plaintiff. [footnote omitted] *See* Plaintiff's Response Exhibit B Pages 23, 62, 64 and 65. First, the accounting dated October 1, 2013, is address[ed] to Plaintiff at her California residence. Second, neither accounting is a contract between Plaintiff and Defendant Michael Booth; instead they could be classified as correspondence relating to Plaintiff's contracts with Duraworks....

. . . .

...Plaintiff has failed to provide any evidence showing how Defendant Michael Booth would be subject to the reach of Texas's long-arm statute. Ultimately, Defendant Michael Booth is a California resident who has interacted with Plaintiff, who is also a California resident, via phone, text, email and in person. However, Defendant Michael Booth has only visited Texas twice: once was a personal visit to El Paso in 2014 and the other was while residing in a corrections facility in 2007/2008. *See* Special Appearance of Defendant Michael Booth Exhibit A paragraph 7. Neither of these visits involved interactions with Plaintiff related to this cause of action; further, the dates do not correspond to Plaintiff's timeline. Therefore, Defendant Michael Booth could not have committed any tort against Plaintiff in Texas nor could he have availed himself of conducting activities in Texas.

The other Appellants collectively filed a Reply in support of their Special Appearances, also arguing that Sections 17.042(1) and 17.042(3) of the Texas long-arm statute should not apply because Kontomitras is not a Texas resident but rather is a resident of California. Their Reply also asserted they have had no interactions with Kontomitras or only very limited interactions by telephone or email with Kontomitras. Their Reply further argued as follows:

> Ultimately, this appears to be a matter between one California resident (i.e.Plaintiff) and numerous other California residents (i.e.[,] Defendants Thomas Allen, Mary Allen, Robert Spaak, Randy Glessner, Courtney Williams, Valerie Spaak, Robert W. Thomas Sr., and Theresa Williams) regarding a possible breach of contract claim for various contracts that state they are governed by California law and various tort claims for torts that did not occur in Texas.

### Issue on Appeal

In a single issue, Appellants argue that "no Appellant had the necessary minimum contacts for personal jurisdiction by a Texas court[.]" Appellants argue that none of the Appellants' conduct establishes minimum contacts or purposeful availment and that neither specific nor general jurisdiction over any of the Appellants is proper.

Kontomitras argues that all of the Appellants "have purposely established minimum contacts" with Texas such that personal jurisdiction is proper. She further argues that Booth acted through the other

Appellants to set up Duraworks as "a shell corporation" in Texas, and she argues that creating a corporation in Texas with a place of business, business accounts, and property in Texas, and making filings with the Texas Secretary of State and Comptroller constitute "systematic and purposeful availment of the benefit and protection of the laws of the State of Texas" sufficient to allow a Texas court to exercise personal jurisdiction over all Appellants. Kontomitras argues that either or both general or specific personal jurisdiction exists over all Appellants.

### Standard of Review

Whether the trial court has personal jurisdiction over a defendant is a question of law that we review de novo. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex.2013); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794–95 (Tex.2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *Moncrief*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658–59 (Tex.2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex.2009).

If the plaintiff meets her initial burden, "the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled." *Moncrief*, 414 S.W.3d at 149; *BMC Software*, 83 S.W.3d at 793. A defendant may negate the plaintiff's jurisdictional allegations on either a factual basis or a legal basis. *Kelly*, 301 S.W.3d at 658–59.

Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.* at 659 (footnotes omitted). If the plaintiff does not plead facts bringing a defendant within reach of the Texas long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction. *Id.* at 658–59 (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982)).

Before determining the jurisdictional question, a trial court must frequently resolve questions of fact. *BMC Software*, 83 S.W.3d at 794. If the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment that are supported by the evidence are implied. *Id.* at 795.[5] If the appellate record includes a reporter's and clerk's record, implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Id.* Due process requires that the jurisdictional inquiry be

---

5. Cf. *Davey v. Shaw*, 225 S.W.3d 843, 857 (Tex.App.—Dallas 2007, no pet.) ("Rule 299 allows presumed findings on unrequested and omitted findings. It does not permit a finding to be presumed when that finding was requested and refused by the trial judge.") (citing *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 742 (Tex.App.—Dallas 1990, writ denied), and *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.—Houston [14th Dist.] 1999, pet. denied)).

separate and distinct from the underlying merits. *See Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 81 (Tex.App.—Houston [1st Dist.] 2008, no pet.). When reviewing Kontomitras's jurisdictional allegations, we ask only whether the allegations are sufficient to invoke the exercise of personal jurisdiction over Appellants without regard to the merits of her claims. *See PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 174 (Tex.2007); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–91 (Tex.2005) (rejecting relevancy, for purposes of specific jurisdiction, of inquiry into defendant's directing a tort in Texas because that theory improperly equates jurisdictional inquiry with underlying merits).

### PERSONAL JURISDICTION

 A trial court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction is authorized by statute and is consistent with federal and state constitutional due process guarantees. *Moncrief*, 414 S.W.3d at 149; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex.2010); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015). The Texas long-arm statute provides that in addition to other acts that may constitute doing business in Texas, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a *Texas resident* [6] and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits *Texas residents*, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (emphasis added). Although an allegation of jurisdiction may satisfy the Texas long-arm statute, the allegation still may not satisfy the due process requirements under the United States Constitution. *Moncrief*, 414 S.W.3d at 149. Accordingly, even if a court determines the facts satisfy the Texas long-arm statute, a court must also examine the facts to determine if the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996).[7]

 Asserting personal jurisdiction over a nonresident defendant comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction comports with traditional notions of fair play and substantial justice. *Retamco Operating*, 278 S.W.3d at 337. The minimum contacts analysis requires " 'some act by which the *defendant purposefully avails*

---

**6.** In Kontomitras's pleadings, she alleged that she "is an individual with residences in the States of Texas and California." Having a "residence" in a State and being a "resident" of a State may not be synonymous allegations. Nevertheless, each of the Appellants' Special Appearances included a statement that Kontomitras is a "Texas resident." Thereafter, in their Reply briefs in support of their Special Appearances and at the hearing on the Special Appearances, Appellants argued that Kontomitras is a "California resident." At the hearing on the Special Appearances, Kon-

tomitras's attorney argued that "an individual and a company can have dual residences." For purposes of our analysis, we assume without deciding that the trial court concluded that Kontomitras was a Texas resident.

**7.** Kontomitras did not allege that any of the Appellants recruited Texas residents for employment inside or outside of Texas, nor does she make that argument on appeal, so we do not consider that prong of the long-arm statute herein.

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana*, 168 S.W.3d at 784 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The focus is on the defendant's activities and expectations. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002). A defendant's contacts may give rise to either general jurisdiction or specific jurisdiction. *See Moncrief*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex.2010). Continuous and systematic contacts with Texas may give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises out of or is related to specific purposeful activities of the defendant in Texas. *Moncrief*, 414 S.W.3d at 150.

> For a trial court to have specific jurisdiction over a defendant, the cause of action must arise out of or relate to the defendant's contact with the forum state. On the other hand, so long as the defendant has had continuous and systematic contacts with the forum state, a trial court has general jurisdiction even if the cause of action did not arise from the defendant's purposeful conduct in the state.

*Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex.1995) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)).

When determining specific jurisdiction, the focus is on the relationship between the forum, the defendant, and the litigation. *Moncrief*, 414 S.W.3d at 150; *Retamco Operating*, 278 S.W.3d at 338. There must be a substantial connection

between the defendant's contacts and the operative facts of the litigation. *Moncrief*, 414 S.W.3d at 156. The contacts must be such that the defendant "should reasonably anticipate being haled into court" in Texas. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980).

## GENERAL JURISDICTION

General jurisdiction may only be exercised over a nonresident defendant whose contacts in the forum state are so continuous and systematic "'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, — U.S. ——, 134 S.Ct. 746, 751, 187 L.Ed.2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). General jurisdiction requires a more demanding minimum contacts analysis than specific jurisdiction does, and the nonresident defendant must have conducted substantial activities within the forum. *BMC Software*, 83 S.W.3d at 797. In order for Texas courts to exercise general jurisdiction over a nonresident, the nonresident's contacts with Texas must be continuous, systematic, and substantial. *See Goodyear*, 131 S.Ct. at 2851, 2853–54; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex.2007) ("If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established whether or not the defendant's alleged liability arises from those contacts."). "General jurisdiction is premised on the notion of consent. That is, by invoking the benefits and protections of a forum's laws, a nonresident defendant consents to being sued there." *Am. Type Culture Collection, Inc.*, 83 S.W.3d at 808. "General jurisdiction has been described as 'dispute-blind,' an exercise of the court's jurisdiction made without regard to the

nature of the claim presented." *PHC–Minden*, 235 S.W.3d at 168.

As Justice Ginsberg stated in *Goodyear*, the Court's 1952 decision in *Perkins v. Benguet Consolidated Mining Company* remains " '[t]he textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.' " *Goodyear*, 131 S.Ct. at 2856 (citing *Perkins*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and quoting *Donahue v. Far Eastern Air Transport Corp.*, 652 F.2d 1032, 1037 (D.C.Cir.1981)). The facts in *Perkins* are illustrative of the type of continuous and systematic contacts by a nonresident defendant which would be sufficient for general jurisdiction. *See generally Perkins*, 342 U.S. at 447–48, 72 S.Ct. 413. In *Perkins*, the president of the company maintained an office in Ohio in which he "did many things on behalf of the company." *Id.* The president maintained company files in Ohio, drew and distributed salary checks from the Ohio office, sent correspondence from Ohio, used two Ohio bank accounts for company funds, had an Ohio bank act as transfer agent for the company stock, held directors' meetings in Ohio, supervised policies in Ohio dealing with the rehabilitation of the corporation's properties in the Philippines, and dispatched funds from Ohio bank accounts to cover purchases of machinery for the rehabilitation. *See. id.* By contrast, in *Helicopteros*, the Supreme Court found that the contacts were insufficient and there was no continuous and systematic contact with Texas. *Helicopteros*, 466 U.S. at 415–19, 104 S.Ct. 1868. "Helicol's contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training." *Id.* at 416, 104 S.Ct. 1868.[8]

The plaintiff must establish more than isolated or sporadic visits with the forum before such contacts will constitute the type of continuous, systematic, and substantial contacts necessary for general jurisdiction. *See id.* at 415–19, 104 S.Ct. 1868. The defendants' contacts with the forum state must be so constant and pervasive as to render them essentially "at

---

**8.** In *Goodyear*, the majority stated "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. 915, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (citing Lea Brilmayer et al., *A General Look at General Jurisdiction*, 66 Tex. L.Rev. 721, 728 (1988)). The Court repeated this concept in *Daimler AG v. Bauman*, — U.S. —, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014) (quoting *Goodyear*, 131 S.Ct. at 2853–54, stating that "*Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."). This possibly signals a reluctance of the Court to allow activities-based general jurisdiction over individual defendants. *See, e.g.*, Michael H. Hoffheimer, *General Personal Jurisdiction After Goodyear Dunlop Tires Operations, S.A. v. Brown*, 60 Kan. L.Rev. 549, 601 (2012). In an earlier case, Justice Scalia, writing for the majority, stated that "[i]t may be that whatever special rule exists permitting 'continuous and systematic' contacts ... to support jurisdiction with respect to matters unrelated to activity in the forum applies *only* to corporations[.]" *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n. 1, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (emphasis added). We find it unnecessary to determine whether activities-based general jurisdiction applies to individuals because even if we assume that the concept is applicable to individuals, on the record now before us, the Appellants' contacts have not been substantial, systematic, or continuous.

home" in Texas. *See Daimler AG*, 134 S.Ct. at 751; *Goodyear*, 131 S.Ct. at 2851; *CSR Ltd.*, 925 S.W.2d at 595. Allegations of "purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868 (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516, 518, 43 S.Ct. 170, 67 L.Ed. 372 (1923)). Additionally, a defendant's ownership of property in a forum state is insufficient for the exercise of personal jurisdiction over a nonresident defendant unless ownership of the real property is the subject of the underlying suit or relates to the underlying cause of action. *See Shaffer v. Heitner*, 433 U.S. 186, 213, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (appellants' property in the state was insufficient to support personal jurisdiction over appellants where the property was not the subject matter of the litigation nor related to the underlying cause of action); *Johnson v. Kindred*, 285 S.W.3d 895, 903 (Tex. App.—Dallas 2009, no pet.) (op. on reh'g) ("[T]he presence of property in a state, without more, does not automatically signify that the defendant has purposefully availed itself of the benefits and protections of state law.").

■ According to Kontomitras, Booth directed that Duraworks be established as a Texas corporation, directed Allen and Glessner to visit Texas to view property and arrange for a business location for Duraworks, directed Allen and Glessner to make credit arrangements with a Texas entity, and solicited Kontomitras to invest, lend money, or enter agreements with Duraworks and/or the Appellants. Kontomitras alleged in her Response to the Special Appearances that Allen owns property in Texas and has visited Texas on several occasions to arrange a place of business for Duraworks and Electric Car, to make credit arrangements, and to set up another

business. As to Spaak, Kontomitras argued that he has owned real property in Texas, participated in negotiating the agreements at issue in this lawsuit, and he is a principal and officer of Electric Car, which has a place of business in Texas. According to Kontomitras, Glessner purchased a vehicle that was stored in Texas, arranged for places of business in Texas for Duraworks and Electric Car, and made credit arrangements with a Texas entity. And, according to Kontomitras, Mary Allen, Valerie Spaak, Courtney Williams, and Theresa Williams have property interests in Texas.

Appellants asserted they are residents of California, not Texas, which Kontomitras does not challenge. Mary Allen, Robert Spaak, and Robert Thomas maintained they have never been to Texas. Several of the other Appellants stated they have made trips to Texas on either personal trips or matters unrelated to Duraworks. Even if we accept as true Kontomitras's allegations that Appellants' own property in Texas and that Appellants made trips to Texas, based on the pleadings and the evidence before the trial court, we conclude that the contacts between the Appellants and Texas have been sporadic and limited and fall short of the type of continuous, systematic, and substantial contacts necessary for a finding of general jurisdiction. *See Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868; *Moki Mac*, 221 S.W.3d at 575.

### SPECIFIC JURISDICTION

■ Specific jurisdiction is "case-linked" and "depends on an 'affiliatio[n] between the forum and the underlying controversy[.]'" *Goodyear*, 131 S.Ct. at 2851 (quoting Arthur T. von Mehren & Donald Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L.Rev. 1121, 1136 (1966)); *see also Mon-*

*crief,* 414 S.W.3d at 150 ("[S]pecific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state."). Specific jurisdiction is proper "when there is evidence that the defendant purposefully availed itself of the forum's jurisdiction by contacts or activities in the forum state, and the cause of action arises from or is related to those contacts or activities." *Hogs Dogs & Lace, LLC v. Sharp Entm't, LLC,* 2014 WL 3387135, at *7, No., 2014 Tex.App. LEXIS 7474, at **19–20 (Tex.App.—Beaumont July 10, 2014, no pet.) (mem.op.) (citing *Retamco Operating,* 278 S.W.3d at 338)); *see also Goodyear,* 131 S.Ct. at 2854 (in determining specific jurisdiction, a court's inquiry is "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State[ ]'") (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228)). We analyze jurisdictional contacts on a "claim-by-claim basis" unless all claims arise from the same forum contacts. *Moncrief,* 414 S.W.3d at 150–51.

In *Walden v. Fiore,* the Court discussed the type of minimum contacts that are necessary to authorize specific jurisdiction. —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). *Walden* arose out of an incident that occurred at the Atlanta Hartsfield–Jackson Airport when the plaintiffs, Fiore and Gipson, were returning from a gambling trip to Puerto Rico. *Id.* at 1119. Walden, a deputized agent for the Drug Enforcement Administration (DEA), approached the plaintiffs at the departure gate for their flight to Las Vegas and seized cash that the plaintiffs won while gambling. *Id.* The plaintiffs explained to Walden that they were professional gamblers and they had residences in California and Nevada, and that they were on their way home. *Id.* The DEA and Walden seized the money from Fiore and Gipson. *Id.* Fiore and Gipson

then filed a suit in federal court in Nevada against Walden, a Georgia resident, alleging intentional violations of their Fourth Amendment rights, arising from the seizure of their money at the Georgia airport. *Id.* at 1120. Walden also assisted in preparing what the plaintiffs alleged was a "false probable cause affidavit" for the forfeiture of the money. *Id.* at 1119–20. Ultimately, the United States Attorney chose not to proceed with forfeiture and the money was later returned to Fiore and Gipson. *Id.* at 1120.

Walden filed a motion to dismiss, which the district court granted because it concluded that it lacked personal jurisdiction over Walden. *Id.* The United States Court of Appeals for the Ninth Circuit reversed, having concluded that the trial court had personal jurisdiction over a portion of the claims pertaining to the filing of the allegedly "false probable cause affidavit[.]" *Id.* The Supreme Court granted review and concluded that Walden lacked minimum contacts with Nevada that would be necessary for the federal district court in Nevada to exercise personal jurisdiction over him. *Id.* at 1121–26. In *Walden,* the Court examined whether a court may exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs in Nevada. *Id.* at 1119. The Court explained that specific jurisdiction requires that the relationship between the defendant, the forum, and the litigation must arise out of contacts that the defendant himself creates with the forum state and that a minimum contacts analysis looks at the defendant's own contacts with the forum state, not the defendant's contacts with persons who reside in the forum state. *Id.* at 1122. Walden's relevant conduct occurred entirely in Georgia and the fact that his conduct affected plaintiffs with connections to Neva-

da was insufficient to authorize personal jurisdiction by a Nevada court. *Id.* at 1126.

## ALTER EGO THEORY

Kontomitras asserted what she describes as an "Alter–Ego/Single Business Theory" claim against Appellants and Duraworks. She contended that the defendants "jointly and severally, caused Duraworks to be used for the purpose of perpetrating a fraud on Plaintiff directly for their own personal benefit." As a general rule, a court may not assert personal jurisdiction over an individual based on the individual's relation to a corporation unless the corporation is the individual's alter ego. *Tuscano v. Osterberg,* 82 S.W.3d 457, 468 (Tex.App.—El Paso 2002, no pet.); *Royal Mortg. Corp. v. Montague,* 41 S.W.3d 721, 738 (Tex.App.—Fort Worth 2001, no pet.); *Vosko v. Chase Manhattan Bank, N.A.,* 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, writ denied). Under the fiduciary shield doctrine, a nonresident corporate officer or employee is protected from the exercise of general personal jurisdiction when all of that individual's contacts with Texas were made on behalf of his employer. *Tabacinic v. Frazier,* 372 S.W.3d 658, 668 (Tex.App.—Dallas 2012, no pet.).

Generally, the courts have limited the application of the fiduciary shield doctrine to attempts to exercise general jurisdiction over a nonresident. *Id.* Additionally, the fiduciary shield doctrine does not protect a corporate officer or employee from an assertion of specific personal jurisdiction when the plaintiff has alleged intentional torts or fraudulent acts for which the individual defendant may be held individually liable. *Id.; see also Stull v. Laplant,* 411 S.W.3d 129, 135 (Tex. App.—Dallas 2013, no pet.); *Ennis v. Loiseau,* 164 S.W.3d 698, 707 (Tex.App.—Austin 2005, no pet.). This is because a "corporate officer is primarily liable for his own torts[.]" *Morris v. Powell,* 150 S.W.3d 212, 221 (Tex.App.—San Antonio 2004, no pet.). Personal jurisdiction over an individual who was associated with a corporation ordinarily will not be based solely upon the corporation's activities in Texas unless the one is the "alter ego" of the other. *Tabacinic,* 372 S.W.3d at 669; *Davey v. Shaw,* 225 S.W.3d 843, 856 (Tex. App.—Dallas 2007, no pet.).

It is the plaintiff's burden to establish that the individual was an alter ego of his employer. *Tabacinic,* 372 S.W.3d at 669; *Wolf v. Summers–Wood, L.P.,* 214 S.W.3d 783, 787–88 (Tex.App.—Dallas 2007, no pet.); *Brown v. Gen. Brick Sales Co.,* 39 S.W.3d 291, 298 (Tex.App.—Fort Worth 2001, no pet.). Alter ego

"is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."

*Cadle v. Graubart,* 990 S.W.2d 469, 472–73 (Tex.App.—Beaumont 1999, no pet.) (quoting *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986)).[9] Even where nonres-

9. By statute, there is a limitation of liability available for certain shareholders that may be available for the failure to comply with corporate formalities. *See* Tex. Bus. Orgs. Code Ann. § 21.223(a)(3) (West 2012); *Nichols v. Tseng Hsiang Lin,* 282 S.W.3d 743, 747 (Tex. App.—Dallas 2009, no pet.) (citing Tex. Bus. Corp. Act Ann. art. 2.21(A)(3) (West 2003) (predecessor statute to Tex. Bus. Orgs. Code § 21.223(a)(3)), and *Howell v. Hilton Hotels Corp.,* 84 S.W.3d 708, 714 (Tex.App.—Houston [1st Dist.] 2002, pet. denied)).

idents' contacts with Texas have been made on behalf of their corporation, personal jurisdiction is proper if those nonresident individuals received some · benefits personally from the activities directed to Texas. *See Solow v. Century Assets Corp.,* 12 S.W.3d 512, 516 (Tex.App.—Beaumont 1999, no pet.). Ultimately, for a court to find personal jurisdiction under a theory of alter ego, the evidence in the record "must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software,* 83 S.W.3d at 799; *see also Davey,* 225 S.W.3d at 854-55. A·conclusory allegation that a nonresident defendant used a resident corporation "as a sham to perpetrate fraud" is insufficient to pierce the veil for jurisdictional purposes where the plaintiff does not plead or otherwise offer evidence of any facts to establish how a defendant allegedly used the corporation to perpetrate fraud. *See Wolf,* 214 S.W.3d at 790. Evidence a court may consider in determining an alter ego relationship includes proof of (1) commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of company profits to the individual for his personal use, (4) inadequate capitalization, and (5) other failure to keep corporate and personal assets separate. *Atiq v. CoTechno Grp., Inc.,* 2015 WL 6871219, at *8, No., 2015 Tex. App. LEXIS 11318, at **26–27 (Tex. App.—Austin Nov. 4, 2015, pet. filed) (mem. op. on reh'g) (citing *Crithfield v. Boothe,* 343 S.W.3d 274, 284–85 (Tex. App.—Dallas 2011, no pet.)).

In this matter, although Kontomitras asserted a claim against the Appellants under an alter ego theory, she did not plead specifically or otherwise offer evidence to support a finding of fraud or injustice with respect to the relationship of Duraworks to any of the Appellants; rather, we conclude that the allegations were of a conclusory nature and do not establish facts sufficient to support an inference of fraud or injustice for jurisdictional purposes. Kontomitras has not shown that any of the Appellants had such a financial interest, ownership, or control over Duraworks that would support fusing the corporation and the individuals for jurisdictional purposes. We conclude that there is a lack of evidence in the appellate record to support an implied finding by the trial court that any Appellant was acting as the "alter ego" so that general jurisdiction exists in Texas. *See BMC Software,* 83 S.W.3d at 799; *Davey,* 225 S.W.3d at 857; *Cadle,* 990 S.W.2d at 472–73. The appellate record affords an insufficient basis for personal jurisdiction over any of the Appellants under an alter ego theory.

## CONTRACT CLAIMS

In Kontomitras's Original Petition and in her First Amended Petition she alleged that "Plaintiff and Defendants ... executed a sequence of agreements beginning in September 2013." In her Response to the Special Appearances, Kontomitras argued that she entered into agreements with Booth and that the defendants "entered into multiple agreements with plaintiff in Texas[ ]." Kontomitras attached copies of the Agreement for Remanufacture between Kontomitras and Duraworks, a Master Agreement between Kontomitras and Duraworks, five Promissory Notes signed by Allen on behalf of Duraworks, a Corporate Guaranty signed by Allen on behalf of Duraworks, and a Personal Guaranty signed by Allen. The Agreement for Remanufacture stated that Duraworks is a Texas corporation, and it contained a California address for both Duraworks and Kontomitras. Furthermore, it stated that the funds provided by Kontomitras shall be used for the "purchase and remanufacture of 70 Cars" at the Duraworks facility

in Palm Desert, California. It also stated that the Agreement for Remanufacture "and the Related Documents" will be determined by the law of California and that

> . . . [t]he Parties agree to waive any objection to jurisdiction or venue on the ground that the Parties are not residents of Kontomitras' locality.[10] The Parties authorize any action brought to enforce the Parties' obligations to be instituted and prosecuted in any state court having jurisdiction or in the United States District Court for the District that includes Kontomitras' location as set forth at the beginning of this Agreement.

The Master Agreement expressly provided that California is the place for performance and that the law of California governs the Master Agreement. The Consignment Agreement included California addresses for both Duraworks and Kontomitras. Three of the Promissory Notes are between Duraworks and Kontomitras, and two of the Promissory Notes are between Duraworks and Elkon Industries, Inc.[11] All Promissory Notes included a California address for Duraworks.

Kontomitras also provided the trial court a copy of a General Indemnity Agreement, which was an agreement made with The Hartford for bonds and named the following as indemnitors: Duraworks,

Thomas and Mary Allen, the Thomas and Mary Allen Trust, Robert and Valerie Spaak, the Robert and Valerie Spaak Revocable Trust, and Don and Roanne Stanley.[12] Kontomitras was not a party to the General Indemnity Agreement, and the General Indemnity Agreement did not name Kontomitras as an indemnitee, it did not identify any agreement between any of the indemnitors and Kontomitras, and it did not name Texas as the place for performance or indicate that it was signed in Texas by any of the named defendants. Kontomitras was named as a party to the corporate Guaranty and Allen's Personal Guaranty, but neither of these guarantees provided that Texas was the place for performance, and both specifically incorporated the Master Agreement, which gave a California address for Kontomitras and also provided that California is the place of performance and that California law applies.

Booth executed a document styled as "Purchase and Sale of 70 Golf Cars," which is referenced as a "Budget" in a typewritten document that purportedly bears Booth's initials and signature. Therein, Booth provided wiring instructions to Kontomitras about the purchase and sale of the "70 Golf Cars." Booth also referred to this document as an "accounting" in his Reply to the Response to Defendant's Special Appearance.

10. Kontomitras does not argue that this language is controlling nor does she contend that as a result of the foregoing contract language or the subsequent language that the Appellants have waived any challenge to personal jurisdiction over the Appellants in Texas.

11. Elkon Industries, Inc. (Elkon) is not a party to the underlying lawsuit. At the hearing on the Special Appearances, Kontomitras's attorney alleged that Kemp Smith, the attorneys for the defendants, set up Elkon in Texas for Kontomitras and that Kontomitras was Elkon's owner.

12. Don and Roanne Stanley are not parties to the underlying lawsuit. In some of the exhibits Kontomitras filed with her Response to the Special Appearances, Don Stanley is mentioned. Don Stanley is listed as the president of Duraworks on the 2013 Texas Franchise Tax Public Information Report, and as the vice president of Duraworks on the 2014 Texas Franchise Tax Public Information Report. The mailing address provided for Don Stanley on both the 2013 and 2014 Reports is 12794 County Road 701, Buna, Texas. These documents also provided the same mailing address for Duraworks.

Generally, entering into a single contract with a Texas resident is insufficient to establish minimum contacts. *Atiq,* 2015 WL 6871219, at \*6, 2015 Tex. App. LEXIS 11318, at \*18. However, if an individual guarantees that he will be responsible for a corporate entity if it defaults, the guaranty may serve as a basis for personal jurisdiction "if there is a showing that the guarantor offered his guarantee as an inducement to the plaintiff to enter into that contract." *Tuscano,* 82 S.W.3d at 467; *see also J.D. Fields & Co. v. W.H. Streit, Inc.,* 21 S.W.3d 599, 604 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Kontomitras did not allege nor has she argued that a personal guarantee was given by any of the Appellants as an inducement to Kontomitras to enter into the contract with Duraworks, and the appellate record does not include evidence of an inducement. Accordingly, the corporate Guaranty, Allen's Personal Guaranty, or the General Indemnity Agreement offer an insufficient basis for exercising personal jurisdiction over any of the Appellants.

The contractual documents Kontomitras referenced in her Response to the Special Appearances indicated that she contracted with Duraworks and not with the individual defendants. *See generally Wolf,* 214 S.W.3d at 792 ("If a person signs a contract in her corporate capacity, she is not individually a party to the contract."). In both the Agreement for Remanufacture and Master Agreement, the parties thereto (Kontomitras and Duraworks) provided the agreements would be performed in California. While we are not bound by a contract's choice-of-law provision, neither may we ignore it. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 598–99 (Tex.2007). Although Kontomitras alleged that Appellants acted "to obtain money from plaintiff in Texas" or that they pursued and solicited money from her in Texas, there is no evidence in the appellate record before us that would support such allegations. The only document in the appellate record that references obtaining funds from Kontomitras is a document that appears to be from Booth, addressed to Kontomitras at an address in Los Angeles, California, and which provided a California address for both Duraworks as beneficiary and contains wiring instructions for Union Bank, a bank that is located in California.

We conclude that there is insufficient evidence in the appellate record to support an implied finding that the alleged contracts were performed or were to be performed in whole or in part in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1). Examining the agreements themselves, focusing on the relationship between the forum, the defendants, and the litigation as established in the record before us, we conclude that as to her claim for breach of contract, Kontomitras has failed to establish a substantial connection between the Appellants' contacts with Texas and the operative facts of the litigation. *Moncrief,* 414 S.W.3d at 156; *Retamco Operating,* 278 S.W.3d at 338. The contacts of the Appellants as established by the appellate record simply are not sufficient on the breach of contract claim such that the Appellants "should reasonably anticipate being haled into court" in Texas. *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 580.

## TORT CLAIMS

Next, we examine Kontomitras's tort claims. With respect to her claims that sound in tort, under the Texas long-arm statute, a defendant is subject to personal jurisdiction if the defendant committed a

tort in whole or in part in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2).

Kontomitras alleged in her petition that she was asserting claims against Appellants for fraud, conversion, and conspiracy. Each claim would sound in tort. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998) (explaining that a fraud claim sounds in tort); *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex.1996) ("Civil conspiracy is an intentional tort."); *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex.1981) (noting that conversion is a tort) (citing to Restatement (Second) of Torts § 237); *White v. Zhou Pei*, 452 S.W.3d 527, 550 (Tex.App.—Houston [14th Dist.] 2014, no pet.) (noting that a common law fraud claim is a cause of action based on tort). Bare assertions of fraud and conspiracy, without more, are generally insufficient to establish personal jurisdiction over a nonresident defendant. *See PHC–Minden*, 235 S.W.3d at 174–75 (stating that fraud, though "vital" to underlying attempt to pierce corporate veil, "has no place in assessing contacts to determine jurisdiction"); *Nat'l Indus. Sand Ass'n*, 897 S.W.2d at 776 (declining to recognize personal jurisdiction based solely on allegations of conspiracy where there is no evidence of conspiratorial acts in or directed to Texas); *Masterguard, L.P. v. Eco Techs. Int'l LLC*, 441 S.W.3d 367, 376 (Tex.App.—Dallas 2013, no pet.) ("A conspiracy claim alone is not enough to establish personal jurisdiction.").

Kontomitras alleged that Booth, as the "mastermind," along with the other Appellants, "individually and in concert" with one another, contrived a scheme or plan to obtain money from her in Texas and divert those funds for their own personal benefit and use, that each made representations to Kontomitras regarding the use of her funds to entice her into dealing with defendants, and they negotiated and facilitated agreements with Kontomitras in Texas or took part in the obfuscation and diversion of money received from Kontomitras. According to Kontomitras, the Appellants knew she resided in Texas and cannot claim it was not foreseeable that their wrongful and tortious activities, regardless of where they occurred, would have consequences within Texas.

The appellate record does not reflect that the conversations, negotiations, and conduct about which Kontomitras complains occurred in Texas. There is no evidence in the appellate record that indicates Kontomitras relied to her detriment upon any specific conversations or representations by any of the Appellants that were made in Texas. *See BMC Software*, 83 S.W.3d at 796–97 (no jurisdiction over nonresident that made no representations to plaintiff in Texas and plaintiff did not rely to his detriment in Texas on nonresident's representations); *Atiq*, 2015 WL 6871219, at *7, 2015 Tex.App. LEXIS 11318, at *24. Furthermore, there is no evidence in the appellate record that Kontomitras transferred money from a Texas bank, that she was in Texas at the time of the alleged misrepresentations, or that the alleged torts were committed in whole or in part in Texas. Regarding Kontomitras's claim of conversion, she did not identify what property Appellants allegedly converted. She has not alleged the Appellants wrongfully exercised dominion and control over any property in Texas. Neither did she allege that her property was converted in Texas or that the wrongful dominion or control occurred in whole or in part in Texas. *See Atiq*, 2015 WL 6871219, at *6–7, 2015 Tex.App. LEXIS 11318, at **21–22. As to her claim for civil conspiracy, personal jurisdiction over a nonresident defendant cannot be based

only on the effects or consequences of the alleged conspiracy. *See National Indus. Sand Ass'n*, 897 S.W.2d at 773. Here, the relationship between the Appellants' alleged contacts with Texas and the operative facts of Kontomitras's tort claims is too attenuated to establish specific jurisdiction over any of the Appellants. *See Atiq*, 2015 WL 6871219, at \*7, 2015 Tex. App. LEXIS 11318, at \*\*23–24. Booth's (or others') communications outside of Texas, requesting or directing that others conduct activity in Texas allegedly resulting in harm to Kontomitras, is an insufficient basis for personal jurisdiction over Appellants. *See Walden*, 134 S.Ct. at 1125 (concluding that defendant's out-of-state conduct directed at plaintiffs known to have connections to the forum state was insufficient for specific jurisdiction). Accordingly, as to her claims that sound in tort, we conclude that Kontomitras has failed to establish sufficient facts showing Appellants' minimum contacts with Texas or purposeful availment of the benefits and protections of Texas.

Kontomitras argued that the Appellants' activities in Texas are sufficient because Appellants created a Texas corporation, Appellants own real property in Texas, Appellants had financial transactions, which she claims involve payment from a Texas bank,[13] and that there is some ownership of vehicles in Texas. Even assuming that the Appellants created Duraworks, that some of the Appellants own real property in Texas, that Appellants had financial transactions in Texas, or that Duraworks owned a vehicle registered in Texas, Kontomitras has not established a substantial connection between these alleged activities and her claims against the individuals in connection with the operative facts of the litigation. *See Moncrief*, 414

S.W.3d at 156 (there must be a substantial connection between the nonresident-defendant's contacts with the forum and the operative facts of the litigation). Simply alleging that Appellants directed a scheme to defraud her in connection with the formation of Duraworks in Texas is not sufficient to establish specific jurisdiction over the Appellants. *See generally Hogs Dogs & Lace, LLC*, 2014 WL 3387135, at \*7, 2014 Tex.App. LEXIS 7474, at \*21 (citing *Michiana*, 168 S.W.3d at 784).

Kontomitras claimed that some of the Appellants own property in Texas, but she failed to establish that the property allegedly owned in Texas by Booth, Allen, Spaak, or Theresa Williams is the subject of the underlying suit or that such property is related to the underlying causes of action. *See Shaffer*, 433 U.S. at 213, 97 S.Ct. 2569; *Johnson*, 285 S.W.3d at 903. The community property interests, if any, held by Mary Allen, Valerie Spaak, or Courtney Williams are not the subject of the underlying lawsuit. Kontomitras cited no legal support for her argument that personal jurisdiction over a party may attach by virtue of an alleged community property interest of her spouse. As to Mary Allen, Valerie Spaak, Courtney Williams, or Theresa Williams, Kontomitras failed to establish that they purposefully availed themselves of the privileges and benefits of conducting business in Texas. *See Michiana*, 168 S.W.3d at 785 (reserving specific jurisdiction for parties who "reach out" to the forum state to "create continuing relationships and obligations" with the citizens thereof, and a defendant "will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party[.]'") (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174). Kontomitras's contention that Theresa Williams

---

**13.** We find no evidence in the appellate record of Texas bank accounts being used by

Duraworks, by any of the Appellants, or by Kontomitras.

has been "the direct knowing beneficiary of money diverted from plaintiff" is not a sufficient basis for specific jurisdiction over Theresa Williams because only a defendant's own actions apply in determining specific jurisdiction, and the requirement of purposeful availment is not satisfied solely as a result of the unilateral activity of another party. *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174. Apart from the bare allegations made by Kontomitras in her pleading, she has failed to establish that a tort was committed, in whole or in part, by any of the Appellants in Texas. *See Kelly*, 301 S.W.3d at 659. On this appellate record, with respect to the tort claims, we conclude that the trial court lacked specific jurisdiction over the Appellants.[14]

CONCLUSION

Accordingly, we conclude that the trial court erred in denying Appellants' special appearances. We sustain Appellants' issue as to all Appellants. We reverse the trial court's order and remand the case with instructions to the trial court to dismiss Appellants and to sever the claims against them from the remainder of the action.

REVERSED AND REMANDED.

14. Having concluded that there is no basis for either specific or general jurisdiction over any of the Appellants, we need not address Appellants' complaint that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice because it would not afford Appellants any greater relief. *See* Tex.R.App. P. 47.1; *Shell Compania Argentina De Petroleo, S.A. v. Reef Expl., Inc.*, 84 S.W.3d 830, 840–41 (Tex.App.—Houston [1st Dist.] 2002, pet. denied).